# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NORTH CAROLINA
### WESTERN DIVISION

TIVA SOFTWARE, LLC,

        Plaintiff,

v.

PERFORMANCE FOOD GROUP, INC.,

        Defendant.

Case No. _____

**JURY TRIAL DEMANDED**

## COMPLAINT

Plaintiff Tiva Software, LLC ("Tiva") submits this Complaint against Defendant Performance Food Group, Inc. ("PFG") and hereby alleges as follows:

## NATURE OF THE ACTION

1. Tiva brings this action to enjoin PFG from breach of contract, misappropriation of trade secrets, and unfair and deceptive trade practices. Tiva further seeks monetary damages arising from PFG's intentional misconduct to the fullest extent allowed by law.

2. Founded in 2002 in Charlotte, North Carolina, Tiva is a leading provider of mobile and Internet ordering and proof of delivery solutions for wholesale and convenience store distributors. With deployments in 49 states and throughout Canada, Tiva provides mission critical solutions for use on a variety of platforms, including Android, Apple iOS, Windows Mobile, Cloud, and traditional desktops. Everyday tens of thousands of users rely on Tiva to process transactions. Tiva has invested many years and many millions of dollars developing and improving its proprietary ordering and proof of delivery solutions.

3.     On information and belief, PFG is a Colorado company having its principal office in Richmond, Virginia.  PFG is a large food distributor.  Its parent company, Performance Food Group Company ("PFGC"), has grown by acquiring a number of other distributors, including a distributor named Core-Mark International, Inc. ("Core-Mark") to which Tiva has provided ordering software since 2013 and proof of delivery ("POD") software since 2017.  Core-Mark's August 11, 2014 Software and Services Agreement with Tiva was assigned to and assumed by PFG on August 19, 2022.  Tiva has also contracted directly with PFG to provide PFG with Tiva's ordering solutions since 2019.  Until recently, PFG has consistently indicated that it intended to continue expanding its use of Tiva's ordering solutions.

4.     Despite years of Tiva providing faithful service and products to PFG and various entities acquired by PFGC—and weekly meetings between Tiva and PFG to discuss software development and ongoing support and maintenance—in December 2024 Tiva discovered a video posted on the website of a PFGC division or subsidiary promoting a new PFG ordering solution. Before December 2024, PFG had concealed its development of a competing ordering solution, giving no indication to Tiva that such development was occurring.

5.     In response to Tiva's inquiries about the new PFG ordering system promoted in the video, PFG informed Tiva in February 2025 that PFG had been developing its own ordering software applications ("PFG CustomerFirst" and "Core-Mark CustomerFirst," collectively the "CustomerFirst Applications") to replace Tiva's ordering solutions and that PFG would not renew its contract with Tiva for Tiva's solutions.

6.     On information and belief, PFG is also working with a third-party provider of POD software to replicate Tiva's POD functionality in order to replace Tiva's POD software application.

7. Additionally, PFG has developed its own portal to replace Tiva's Enterprise Connect portal (the "Replacement Portal").

8. Based on Tiva's review of publicly available features of the CustomerFirst Applications and the relatively short timeline for their creation as compared to the timeline for Tiva's development, the CustomerFirst Applications, now in use, could not have been developed without breaching contractual obligations, without unauthorized use of Tiva's software, and without misappropriation of Tiva's trade secrets.

9. PFG's intentional misconduct, unless restrained and enjoined, will cause irreparable injury to Tiva's business. Accordingly, Tiva brings claims against PFG for breach of contract, trade secret misappropriation (under both federal and state laws), and unfair and deceptive trade practices, and seeks injunctive relief barring PFG from continuing its unlawful activities and continued use of the CustomerFirst Applications, Replacement Portal, and POD software under development, as well as monetary damages to the fullest extent allowed by law.

## PARTIES

10. Plaintiff Tiva is a North Carolina limited liability company formed on August 13, 2002, headquartered in Charlotte, North Carolina, with an address of P.O. Box 78438, Charlotte, North Carolina, 28271.

11. On information and belief, defendant PFG is a Colorado corporation with a place of business at 12500 West Creek Parkway, Richmond, Virginia 23238.

## JURISDICTION AND VENUE

12. This Court has subject matter jurisdiction over Tiva's federal claims pursuant to the Defend Trade Secrets Act, 18 U.S.C. § 1836 *et seq.* and 28 U.S.C. § 1331. The Court has supplemental jurisdiction over Tiva's state law claims pursuant to 28 U.S.C. § 1367.

13.     Venue is proper in the Western District of North Carolina pursuant to 28 U.S.C. § 1391(b)(2).

## FACTUAL BACKGROUND

**I.      TIVA'S INDUSTRY-LEADING SOLUTIONS**

**A.      Ordering Software**

14.     Tiva's industry-leading ordering software applications, OrderPro (for iOS mobile devices) and DroidPad (for Android mobile devices), and Tiva's Online Ordering system ("OLO"), Pricebook Connect (for POS integration), and Tiva's Computer-Assisted Ordering system ("CGO") are used by broadline distributors and their customers primarily in, but not limited to, the convenience store industry. The distributors provide Tiva's ordering applications to their customers, which use Tiva's ordering applications on mobile devices and other digital platforms to order products from the distributor, which then delivers the products ordered.

**B.      Proof-of-Delivery Software**

15.     Tiva's POD software is used by a distributor's delivery drivers for a variety of functions, including proof that a delivery has been made, team routes, driver credits, empty container returns, and predetermined driver pickups.

**C.      Back-End Software**

16.     Tiva's back-end software, Enterprise Connect, processes data from Tiva's ordering applications and Tiva's POD software application and transmits that data to a distributor's enterprise resource planning ("ERP") systems. Tiva's Enterprise Connect system also receives data from a distributor's ERP system and transmits that data to Tiva's ordering and POD software applications. Tiva's Enterprise Connect portal is private labeled for PFG as the "iMark portal" and the "Vistar portal" (collectively, the "Enterprise Connect portal").

4

### D. Tiva's Trade Secrets

17. Tiva owns protectable trade secret rights in its software, related documentation, algorithms/business rules implemented by its software, data schema, and proposed product improvements. By way of example only and without limitation, Tiva owns specific trade secrets within the following areas:

(a) The data transmission schema used by Tiva's software, which defines how data is structured and organized for transmission between different systems, including specifying the file formats, data types, and relationships within the data being sent. The data transmission schema used to exchange data between Tiva's applications and PFG's ERP systems ensures consistent and accurate data transfer between Tiva, PFG, and PFG's customers. Tiva's data transmission schema was requested by and provided to PFG under use restrictions and confidentiality provisions in the parties' Contract (reflected in part below).

(b) The database schema used in Tiva's Enterprise Connect system. PFG has been using Tiva's Enterprise Connect system for many years under use restrictions and confidentiality provisions in the parties' Contract.

(c) Technical information describing how to configure or "map" data exchange between Tiva's Enterprise Connect system and a distributor's (*i.e.*, PFG's) data warehouse. Such information was requested by and provided to PFG under use restrictions and confidentiality provisions in the parties' Contract and would significantly reduce the time needed to develop a competing system.

(d) Business rules/algorithms used by Tiva's ordering application and Enterprise Connect portal provided to PFG under use restrictions and confidentiality provisions in the parties' Contract.

(e) Future Product Improvements proposed by Tiva to PFG in Statements of Work not entered into by PFG. Tiva provided more than 40 Statements of Work ("SOW") over the years to PFG and its subsidiaries and affiliates containing detailed technical information, wireframes, and mockups of new product features Tiva proposed to incorporate into its products. The SOWs were provided under use restrictions and confidentiality provisions in the parties' Contract and each SOW includes the legend "Proprietary and Confidential." PFG decided not to engage Tiva to perform a number of those SOWs, but unbeknownst to Tiva, PFG incorporated product improvements proposed in such SOWs into the CustomerFirst Applications. By way of example and without limitation, in 2024, after months of work performed at PFG's request, Tiva provided a Foodservice Programs Feature SOW ("2024 SOW") to PFG/Core-Mark intended to increase awareness and use of Core-Mark's food service programs within the convenience retail channel. The 2024 SOW contains product improvements relating to navigation features, product availability information, additional information about products, ordering methods, order organization and grouping, and feedback functionality. PFG never commissioned development of the 2024 SOW, but PFG later incorporated such product improvements into the CustomerFirst Applications.

(f) Other Product Improvements Proposed by Tiva to PFG. Tiva proposed a number of product improvements to PFG by way of detailed technical information, wireframes and mockups of new product features that were not embodied in SOWs. These product improvements were provided under use restrictions and confidentiality provisions in the parties' Contract. PFG decided not to engage Tiva to implement these product improvements, but unbeknownst to Tiva, PFG incorporated such product improvements into the CustomerFirst Applications. By way of example and without limitation, for several years Tiva proposed to PFG a method of reducing reclamation and increasing order accuracy and sales volume. PFG never engaged Tiva to

implement this method, but later incorporated the method into the CustomerFirst Applications.

(g) Tiva also has protectable trade secret rights in certain software functionality provided to PFG under use restrictions and confidentiality provisions in the Parties' Contract, including, by way of example and without limitation, integrated functions as combined on Tiva applications and portals, determinations of last quantity of goods ordered and last order date, specialized user roles, integrated credit functionality, determination of "missing items," and automated order quantity information.

(h) The specific trade secrets within the foregoing areas, and other trade secrets owned by Tiva and provided to PFG under use restrictions and confidentiality provisions in the Parties' Contract, are referred to hereinafter as the "Tiva Trade Secrets."

18.     Tiva has expended considerable time and resources developing the Tiva Trade Secrets.  They provide Tiva with a significant competitive advantage.  The Tiva Trade Secrets derive independent economic value as a result of not being generally known or readily ascertainable through proper means by others.

19.     At all times, Tiva has taken reasonable measures to maintain the confidentiality of the Tiva Trade Secrets and protect them from unauthorized disclosure.  By way of example and without limitation:  Each Tiva employee and contractor having access to Tiva's confidential information is required to enter into a written confidentiality agreement and a written agreement to comply with Tiva's Software Information Security Policy; among other things, these agreements restrict use and disclosure of Tiva confidential information both during and after employment and require return of all Tiva documents and property upon termination.  Tiva's customer and vendor contracts involving disclosure of Tiva Trade Secrets and confidential information contain provisions directed toward confidentiality protection and use limitations.  Tiva's SOWs are clearly

marked "confidential." Tiva maintains electronic information in secured environments. Access to Tiva's IT systems is password protected and limited to personnel having a need to know. Tiva's Enterprise Connect portal is hosted inside a secure data center having physical and electronic access restrictions. Each user downloading Tiva's ordering or POD software applications must accept Tiva's Terms of Service Agreement, which restrict a user's use and dissemination of the applications.

## II.  THE PARTIES' CONTRACT

20.     Tiva entered into a Software and Services Agreement with PFG on April 1, 2019 (the "Contract").

21.     The Contract provides for Tiva to license and supply certain Tiva software products and services to PFG and Authorized Users.

22.     The Contract defines an Authorized User as "(a) each of the employees, contractors, and agents of PFG Entities and (b) each licensed customer of a PFG Entity and each such customer's employees, contractors, and agents, *except that a third-party contractor of a PFG Entity is not an Authorized User if it is Tiva Competitor*." [Schedule 1] (emphasis added)

23.     The Contract defines a Tiva Competitor as a "software and services company offering products and services competitive to Tiva's software and services." [Schedule 1]

24.      The Contract includes the following key provisions:

- Tiva owns and retains as the sole owner all intellectual property rights to its software products and all works derived from its software, including all forms, screen layouts, algorithms, processes, procedures, routines, coding, database structures and operations created by Tiva or included under Tiva's rights of ownership. [Recital C]

- Tiva retains sole and exclusive rights to all Tiva IP Rights (including Tiva's documentation, diagrams, application designs, plans and designs for future applications, data processing techniques, and other confidential information) and sole and exclusive ownership of all Tiva Device Software, Tiva Mobile Apps, and Tiva Server Software, provided to PFG under this Agreement (and all IP Rights therein), and PFG and its Affiliates retain sole and exclusive ownership of all PFG Data and

PFG Materials (and all IP Rights therein). [Section 9.1]

- PFG may not: (a) use, copy, merge, or transfer the Tiva Software Products or any part of the Tiva Software Products, including forms, screen layouts, integrated functions as combined on Tiva portals and websites, except as provided in this Agreement; (b) reverse assemble, reverse compile, reverse engineer, or otherwise translate the Tiva Software Products or any part of the Tiva Software Products by any means except as specifically permitted by law without the possibility of contractual waiver; (c) sublicense, rent or lease the Tiva Software Products or any part of the Tiva Software Products to anyone other than PFG Entities or Licensed Authorized Users; (d) use the Tiva Software Products or any part of the Tiva Software Products to create derivative works of any kind, including, but not limited to, coded into another programming language, ported to another operating system or hardware platform, or to use derivative or similar works to provide competing products or services; or (e) act as a "Service Bureau" for any third party other than the PFG Entities or Authorized Users included in this Agreement. [Section 2.2]

- Each Receiving Party agrees: (a) to hold the Disclosing Party's Confidential Information in confidence, using the same degree (but no less than a reasonable degree) of care and protection that it exercises with its own Confidential Information of a similar nature; (b) not to directly or indirectly disclose or otherwise make available the Disclosing Party's Confidential Information to a third party; and (c) not to use the Disclosing Party's Confidential Information for any purpose other than as necessary to fulfill such party's obligations or exercise its licenses or other rights under this Agreement. Notwithstanding the above, PFG may disclose Tiva's Confidential Information to Licensed Authorized Users with a need to know (User Documentation and executable Programs), Tiva may disclose to Licensed Authorized Users PFG's Confidential Information that PFG designates to be made available to those Authorized Users through the Tiva Software, and any party may disclose Confidential Information if so required by Law or regulation (including court order or subpoena or other governmental decree or authority), provided that the Receiving Party, if required by governmental authority to reveal Confidential Information of the Disclosing Party shall, if allowed by Law, notify the Disclosing Party promptly upon learning of the government requirements and before making such disclosure, and shall provide the Disclosing Party with an opportunity (at the Disclosing Party's own expense) to resist or limit such disclosure or to seek a protective order. [Section 10.2]

25.     The Contract provides that "[t]he laws of the United States and the State of North Carolina … govern all matters arising out of or relating to this Agreement and all of the transactions it contemplates, including its validity, interpretation, construction, performance, and enforcement." [Section 15.2]

26.     The parties extended the Contract twice.

9

27.     By way of a second amendment, the Contract was extended until August 19, 2025.

28.     PFG has been and is bound by ongoing use and confidentiality restrictions with respect to Tiva's software products and confidential information (including trade secrets), pursuant to the Contract as well as the separate 2014 Core-Mark contract that was assigned to PFG.

29.     The separate 2014 Core-Mark contract will terminate on August 19, 2026, at the end of the Transition Period set forth therein.

## III.    PFG'S DEVELOPMENT OF COMPETING SOFTWARE

30.     On information and belief, PFGC is one of the nation's largest broadline food distributors with over 150 locations and product delivery to more than 300,000 customer locations, many of which are convenience stores.

31.     PFGC has grown by acquisition, including by acquiring distributors Vistar Corporation (2008), Eby-Brown Company, LLC (2018), Reinhardt Foodservice (2019), Core-Mark International, Inc.  (("Core-Mark") (2021)) and Cheney Bros., Inc. (2024).

32.     Core-Mark was an existing customer of Tiva when it was acquired by PFGC and Core-Mark continues to use Tiva's software products.

33.     Vistar became a customer of Tiva after it was acquired by PFGC.

34.     In December 2024, without any notice to Tiva, PFG replaced images of Tiva's ordering applications on the Core-Mark website with an announcement of the new Core-Mark CustomerFirst Application and published a video on the website promoting the new Core-Mark CustomerFirst Application.  When Tiva contacted PFG to ask about the video, PFG stated that it was a "mistake" and quickly removed the video from the Core-Mark website.

35.     In late 2024 and early 2025, PFG introduced the CustomerFirst Applications for use by its customers.  Beginning in February 2025 and thereafter, PFG has informed Tiva that the CustomerFirst Applications are intended to replace Tiva's ordering solutions.

36.     Both CustomerFirst Applications are available for download, as shown in the screenshot below:



37.     The copyright notice in the description of the Core-Mark CustomerFirst Application on the Apple AppStore states "© Performance Food Group."

38.     On information and belief: (i) the Core-Mark CustomerFirst Application is used in convenience store ordering, and (ii) the PFG CustomerFirst Application is used for restaurant/theater/food services/campus retail ordering.

39.     On information and belief, based on PFG's statements to Tiva after PFG disclosed its intention to transition to the CustomerFirst Applications, the CustomerFirst Applications were developed over a period of approximately two years.

40.     On information and belief, the CustomerFirst Applications were developed by PFG and a third-party software developer (the "CustomerFirst Developer").

41.     On information and belief, the Replacement Portal was developed by PFG and a third-party software developer (the "Portal Developer" and, collectively with the CustomerFirst Developer, the "Third-Party Software Developers").

42.     The CustomerFirst Developer is a Tiva Competitor as defined in the Contract because the CustomerFirst Developer is a software and services company offering products and services competitive to Tiva's software and services.

43.     The Portal Developer is a Tiva Competitor as defined in the Contract because the Portal Developer is a software and services company offering products and services competitive to Tiva's software and services.

44.     On information and belief, persons assigned by PFG to work with the Third-Party Software Developers include personnel having long-standing, significant relationships with Tiva and detailed knowledge of Tiva's ordering solutions, POD software, and Enterprise Connect portal, including the Tiva Trade Secrets.

45.     On information and belief, persons assigned by PFG to work with the Third-Party Software Developers provided proprietary information to the Third-Party Software Developers regarding Tiva's mobile applications and Enterprise Connect portal, without permission or authorization from Tiva, in violation of PFG's contractual obligations to Tiva.

46.     The numerous similarities between the CustomerFirst Applications and Tiva's ordering applications, and the relatively short time period in which PFG developed the CustomerFirst Applications, are such that PFG could not have developed the CustomerFirst Applications without breaching one or more contractual obligations and engaging in unauthorized use of Tiva Trade Secrets.

47.     By way of example and without limitation, the following features from Tiva's ordering applications have been copied in the CustomerFirst Applications:

- style, location, functions, and color of various badges used in the application;
- hierarchy of filtering and search user interface elements;
- selection of data elements displayed in the user interface;
- AOQ ordering feature;
- order guides and flyers;
- placement of fields in various screens;
- prompts and alerts;
- hierarchy of suggested items screens;
- addition of imagery, nutritional facts, ingredients, and allergen information;
- category grouping; and
- navigational features combining arrows and dots.

48.     The similar and/or identical features are so significant and extensive that it is apparent that Tiva's software products were used to create and provide the competing CustomerFirst Applications, in violation of PFG's contractual obligations to Tiva.

49.     On information and belief, PFG has engaged a POD software provider to replace Tiva's POD software.

50.     On information and belief, PFG is working with Systems Application Enterprises, Inc. ("SAE") to enhance its POD product to match the functionality of Tiva's POD application and develop the replacement POD software.

51.     SAE is a Tiva Competitor as defined in the Contract because SAE is a software and services company offering products and services competitive to Tiva's software and services.

52. PFG personnel are providing information about the functionalities of Tiva's POD software to SAE, without permission or authorization from Tiva, in violation of PFG's contractual obligations to Tiva.

53. In addition to the Third-Party Software Developers and SAE, PFG has provided unauthorized access to Tiva's confidential information and trade secrets to HCL Technologies Limited ("HCL") and its affiliates.

54. HCL is a global technology company that provides information technology and software services.

55. HCL is a Tiva Competitor as defined in the Contract because HCL is a software and services company offering products and services competitive to Tiva's software and services.

56. Tiva recently discovered that HCL provides services to PFG that relate to Tiva's ordering applications. By way of example and without limitation, PFG placed HCL individuals in positions of responsibility for implementing Tiva's system at Vistar. In that role, Tiva often communicated with HCL personnel believing them to be PFG personnel.

57. PFG did not inform Tiva of its relationship with HCL and never informed Tiva that the individuals with whom Tiva was corresponding were not PFG employees but rather were HCL personnel.

58. PFG masked the true identities of HCL personnel it assigned to work with Tiva by providing such personnel with PFGC email addresses, so Tiva had no way of knowing that it was not communicating with PFG but rather was communicating with HCL.

59. Tiva communicated confidential technical information and trade secret information to HCL personnel believing them to be PFG personnel (and using PFG-issued email addresses), and only recently discovered that they were in fact HCL personnel.

60.     At the same time that PFG was surreptitiously planning and developing the CustomerFirst Applications and the Replacement Portal, PFG was actively meeting with Tiva and soliciting ideas from Tiva about Tiva's software products and new product features, including, by way of example and without limitation, the 2024 SOW (discussed above), other non-implemented SOWs, other product improvement proposals requested by and provided to PFG, and repeated requests for information relating to Tiva's data schema allegedly for use in deploying Tiva's solutions at Eby-Brown, which never occurred.  Thereafter, features disclosed by Tiva in the SOWs and other wireframe/mockup presentations were incorporated into the CustomerFirst Applications and, on information and belief, in the Replacement Portal, in violation of PFG's contractual obligations to Tiva.

61.     As an additional example, in March of 2022, PFG requested that Tiva begin the onboarding process to rollout Tiva's ordering application at all Eby-Brown Company (now known as "Core-Mark North") warehouses.  Pursuant to that request, Tiva thereafter provided its confidential mapping document to Core-Mark North, setup Core-Mark North customer locations on the iMark portal, conducted extensive testing with Core-Mark North, and created a separate instance for Core-Mark North at Tiva's data center.  Despite Tiva's best effort to complete the onboarding process, however, Core-Mark North was never deployed due to obstacles and delays presented by Core-Mark North and PFG.

62.     PFG purposefully engaged and misled Tiva in order to obtain as much information as possible from Tiva, including confidential information and trade secrets, in order to use that information in the development of the CustomerFirst Applications and the Replacement Portal that PFG was simultaneously developing.

## IV.     TIVA STANDS TO LOSE SUBSTANTIAL REVENUE

63.     PFG has paid Tiva annual licensing fees.

64.     These fees increased as PFG acquired additional distributors and users.

65.     By PFG creating and deploying the competing CustomerFirst Applications and the Replacement Portal, Tiva has lost and will lose annual licensing fees and stands to lose many millions of dollars in such fees.

66.     Just in the short time that the CustomerFirst Applications have been available, there have been over 10,000 downloads.  But for PFG's creation and deployment of the CustomerFirst Applications, Tiva's software would have been used and downloaded by most or all of those users.

67.     Because PFG's CustomerFirst Applications and Replacement Portal, derived through PFG's breach of the Contract, misappropriation of trade secrets, and intentional misconduct, are replacing Tiva's ordering solutions, Tiva stands to lose significant future fees amounting to millions of dollars per year.  But for PFG's breach of the Contract, misappropriation of trade secrets, and intentional misuse of Tiva's software and intellectual property to develop competing software, PFG would have renewed its Contract with Tiva, as well as the Core-Mark contract, over multiple years.

68.     Other sources of lost revenue are from developing and implementing SOWs and the lost additional licenses that would flow from PFG's annual growth and acquisitions.

69.     Further, to the extent that PFG and SAE complete development of POD software to replace Tiva's POD software, through breach of the Contract, and/or misappropriating Tiva Trade Secrets, Tiva stands to lose revenue from the loss of use of Tiva's POD software.

## V.     TIVA WILL SUFFER IRREPARABLE HARM

70.     PFG's intentional misconduct, unless enjoined, will irreparably harm Tiva.

71.     PFG's development and implementation of the CustomerFirst Applications and Replacement Portal will result in Tiva losing key business permanently.  PFG shows no indication that it will cease violating its contractual obligations and/or misusing Tiva's confidential

16

information and trade secrets. PFG is already having POD software developed that will cause further irreparable harm to Tiva.

72.     Tiva is therefore suffering significant and irreparable injury as a result of PFG's intentional misconduct.

## COUNT I: BREACH OF CONTRACT

73.     Tiva incorporates the foregoing allegations by reference.

74.     PFG entered into the Contract, a valid and binding contract, with Tiva.

75.     Tiva has performed its obligations under the Contract.

76.     PFG breached the Contract, including without limitation Sections 2.2 and 10.2 of the Contract, by, among such other acts as discovery may reveal, misusing Tiva's software products to create and provide competing products and services and disclosing Tiva's confidential information to unauthorized third parties.

77.     PFG's misconduct was and is intentional, knowing of its obligations to Tiva under the Contract, yet willfully violating them.

78.     PFG's breaches of the Contract have caused injury to Tiva, and absent injunctive relief, will irreparably harm Tiva.

79.     Tiva has been damaged by PFG's breaches and intentional misconduct in an amount to be established at trial.

## COUNT II: VIOLATION OF THE DEFEND TRADE SECRETS ACT
### (18 U.S.C. § 1836 *et seq.*)

80.     Tiva incorporates the foregoing allegations by reference.

81.     PFG has violated the Defend Trade Secrets Act. Tiva owns and possesses trade secret rights in the Tiva Trade Secrets, as set forth above. At all times, Tiva exercised reasonable measures to maintain the confidentiality of the Tiva Trade Secrets and protect them from

unauthorized disclosure, as set forth above. The Tiva Trade Secrets derive independent economic value as a result of not being generally known or readily ascertainable through proper means by others, as set forth above.

82. PFG misappropriated the Tiva Trade Secrets, in whole or in part. PFG acquired Tiva's confidential information (including the Tiva Trade Secrets) under circumstances giving rise to a duty to maintain its secrecy and limit its use. Nonetheless, PFG misused the Tiva Trade Secrets and transmitted them to others who were not authorized to receive them, without Tiva's knowledge or consent, in order to create the CustomerFirst Applications, the Replacement Portal, and the replacement POD software.

83. PFG's misconduct was and is intentional, willful, and malicious, knowing of its obligations not to misuse Tiva Trade Secrets or disclose them to unauthorized third parties, yet willfully violating those obligations.

84. The trade secrets that PFG misappropriated are related to products and services used in interstate commerce because Tiva's software is used across the United States.

85. If the Court does not enjoin PFG from misusing and improperly disclosing Tiva Trade Secrets, PFG will continue to use that information for PFG's benefit and to Tiva's detriment, causing Tiva irreparable harm.

86. Tiva has been damaged by PFG's intentional misconduct in an amount to be established at trial.

### COUNT III: VIOLATION OF THE NORTH CAROLINA TRADE SECRETS PROTECTION ACT (N.C. Gen. Stat. §§ 66-152 to 66-157)

87. Tiva incorporates the foregoing allegations by reference.

88. PFG has violated the North Carolina Trade Secrets Protection Act. Tiva owns and possesses trade secret rights in the Tiva Trade Secrets, as set forth above. Tiva exercised

reasonable measures to safeguard the confidentiality of this information, as set forth above. The Tiva Trade Secrets derive independent economic value as a result of not being generally known or readily ascertainable through proper means by others, as set forth above.

89. PFG willfully and maliciously, and acting in bad faith, misappropriated Tiva Trade Secrets, in whole or in part, by misusing Tiva Trade Secrets and improperly transmitting them to unauthorized third parties in order to develop and implement the CustomerFirst Applications, Replacement Portal, and replacement POD software. PFG did so in order to expedite development of the CustomerFirst Applications, Replacement Portal, and replacement POD software, which could not have been developed in a shortened time frame without reliance on and misuse of Tiva Trade Secrets, to ensure that PFG's customers would be familiar with use of the new CustomerFirst Applications, and to ensure that PFG's Replacement Portal and replacement POD software would operate seamlessly with its ERP systems and new CustomerFirst Applications.

90. PFG's misconduct was and is intentional, willful, and malicious, knowing of its obligations not to misuse Tiva Trade Secrets or disclose them to unauthorized third parties, yet willfully violating those obligations.

91. If the Court does not enjoin PFG from misusing and improperly disclosing Tiva Trade Secrets, PFG will continue to use that information to PFG's benefit and to Tiva's detriment, causing Tiva irreparable harm.

92. Tiva has been damaged by PFG's intentional misconduct in an amount to be established at trial.

**COUNT IV: VIOLATION OF THE NORTH CAROLINA UNFAIR AND DECEPTIVE TRADE PRACTICES ACT (N.C. Gen. Stat. § 75.1.1)**

93. Tiva incorporates the foregoing allegations by reference.

94. PFG's actions are in and affecting commerce in North Carolina and are unfair and

deceptive acts or practices in violation of N.C. Gen. Stat. § 75-1.1.

95. The acts and conduct of PFG as alleged constitute unfair competition under North Carolina common law, including, without limitation, inducing Tiva to develop and disclose software improvements with the intent to misappropriate them for PFG's own CustomerFirst Applications, inducing Tiva to disclose its data transmission schema with the intent to misappropriate that information for use in PFG's Replacement Portal, deceiving Tiva into sending confidential business information to third parties by assigning those third parties PFGC email addresses, and misappropriating Tiva Trade Secrets and other confidential business information.

96. PFG's acts and conduct have been willful, reckless, wanton, egregious, unfair, unethical, deceptive, and unscrupulous.

97. PFG's acts and intentional misconduct as alleged above cause and continue to cause damage to Tiva, including to its goodwill and reputation, and have resulted in losses to Tiva and illicit gain by PFG in an amount to be established at trial.

98. As a direct and proximate result of PFG's improper action, intentional misconduct, and unfair competition as set forth herein, Tiva has suffered and continues to suffer damages, and is entitled to monetary and injunctive relief pursuant to N.C. Gen. Stat. § 75-1.1 *et seq.*, as well as attorneys' fees and costs pursuant to N.C. Gen. Stat. § 75-16.1, and treble damages pursuant to N.C. Gen. Stat. § 75-16, all in amounts to be established at trial.

## PRAYER FOR RELIEF

WHEREFORE, Tiva prays that the Court enter an order:

99. Granting Judgment in Tiva's favor as to each and every Count alleged herein;

100. Finding that PFG's misconduct as to each and every count alleged herein was and is intentional, willful, and malicious;

101.    Preliminarily and permanently enjoining PFG and all persons acting in concert with PFG from using the CustomerFirst Applications, Replacement Portal, and replacement POD software;

102.    Preliminarily and permanently enjoining PFG and all persons acting in concert with PFG from further violating the contractual use and confidentiality restrictions;

103.    Preliminarily and permanently enjoining PFG and all persons acting in concert with PFG from further misappropriating Tiva Trade Secrets, directly or indirectly;

104.    For a compensatory damages award (including without limitation actual loss, unjust enrichment, and consequential damages) in Tiva's favor and against PFG, to the fullest extent allowed by law for the Counts alleged herein, in an amount to be determined at trial;

105.    For an award in Tiva's favor and against PFG of all other forms of available damages, including without limitation exemplary damages under the Defend Trade Secrets Act and punitive damages under the North Carolina Trade Secrets Protection Act, in an amount to be determined at trial;

106.    For pre- and post-judgment interest to Tiva on all awards for which they are available;

107.    Requiring PFG and all persons acting in concert with PFG to return all Tiva confidential information in their possession, custody, or control in accordance with PFG's contractual obligations, including without limitation all Tiva confidential information incorporated and/or used in the CustomerFirst Applications, Replacement Portal, and replacement POD software;

108.    Awarding Tiva its attorney fees and costs; and

109.    Granting all such other and further relief as the Court deems just and proper.

# JURY DEMAND

Tiva demands a trial by jury for all causes of action and claims in this action that are triable by right to a jury.

Dated: September 3, 2025

Respectfully submitted,

_/s/ Jacob S. Wharton_

Jacob S. Wharton
N.C. Bar No. 37421
WOMBLE BOND DICKINSON (US) LLP
One West Fourth Street
Winston-Salem, North Carolina
Telephone: (336) 747-6609
Jacob.Wharton@wbd-us.com

John D. Wooten IV
N.C. Bar No. 51074
WOMBLE BOND DICKINSON (US) LLP
300 N. Green Street, Suite 1900
Greensboro, North Carolina
Telephone: (336) 574-8090
JD.Wooten@wbd-us.com

Of Counsel:

Steven M. Levitan (_pro hac vice_ application forthcoming)
WOMBLE BOND DICKINSON (US) LLP
50 California Street, Suite 2750
San Francisco, California
Telephone: (408) 341-3045
Steve.Levitan@wbd-us.com